IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TANYA YOLANDA COOK,

        Plaintiff,

    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

CIVIL ACTION FILE NO.

1:08-CV-0934-JFK

## FINAL OPINION AND ORDER

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration which denied her applications for a period of disability, disability insurance benefits, and supplemental security income. For the reasons set forth below, the court **ORDERS** that the Commissioner's decision be **REVERSED** and that the case be **REMANDED** for further proceedings.

## I.    Procedural History

Plaintiff Tanya Yolanda Cook protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on April 20, 2004. The claimant alleged she became disabled on August 1, 2003, due to bipolar disorder with manic psychosis. [Record ("R.") at 9, 63-66, 154, 452-53]. After her applications were denied initially and on reconsideration, an administrative hearing was held on September 10, 2007. [R. at 22-29, 454-85]. The Administrative Law Judge ("ALJ") issued a decision on September 28, 2007, denying the claimant's applications. [R. at 12-15]. Plaintiff requested review by the Appeals Council, but Plaintiff's request was denied on January 5, 2008. [R. at 2-5]. As a result, the decision of the ALJ stands as the final decision of the Commissioner, making it subject to judicial review. Plaintiff filed her complaint for judicial review [Doc. 2] in this court on March 5, 2008, and the parties have consented to proceed before the undersigned Magistrate Judge.

## II.    Statement of Facts

The ALJ found that claimant Tanya Yolanda Cook has bipolar disorder, manic, with psychotic features. [R. at 12]. Although this impairment is "severe" within the

2

meaning of the Social Security Regulations, the ALJ found that it did not meet or medically equal the criteria set forth for any impairment listed in Appendix 1, Subpart P, Regulations No. 4. [R. at 12]. The ALJ found that the claimant has the residual functional capacity to perform a full range of work at all exertional levels limited to simple, low-stress jobs that do not require a significant amount of public contact. [R. at 12-15]. Therefore, the claimant was not under a disability. [R. at 15].

The ALJ's decision [R. at 9-15] states the relevant facts of this case as modified herein as follows:

The claimant currently is working, and based on her earnings record, she has worked fairly regularly in each year since she alleges she became unable to work. She had approximately $4,296 in earnings in calendar year 2004, an average of $358 per month. In 2005, she earned approximately $7,978 or $665 per month. In 2006, she earned $6,897 or $575 per month. These earnings, on a monthly basis, do not demonstrate that her work was substantial gainful activity. It cannot yet be determined whether her current work is substantial gainful activity because it is unclear how long she has held her current job or what her earnings have been. For purposes of this step of sequential evaluation, however, it is assumed that she is not engaging in substantial gainful activity.

AO 72A
(Rev.8/82)

The record shows that some two months before filing her applications, the claimant was hospitalized at Summit Ridge, a psychiatric hospital, due to auditory and visual hallucinations and suicidal ideation. She also disclosed a "religious experience" and was preoccupied with this event. She was diagnosed with bipolar disorder, with psychosis. A few weeks after her discharge from that facility, she sought outpatient treatment at Gwinnett/Rockdale/Newton ("GRN") mental health program, but she apparently did not continue in regular treatment.

On July 16, 2004, the claimant was seen for a consultative psychological evaluation, which concluded with a primary diagnosis of bipolar I disorder with single manic episode with psychosis, in partial remission. She gave the psychologist a history of having had a "religious experience" in February 2004, after a night of "partying." She had improved following hospitalization, however, and her medication was said to work "to a moderate degree." She reported being able to complete activities of daily living and a wide range of chores on her own, although she reportedly did have difficulty one or two days a week due to fatigue and lack of motivation.

There is no evidence that the claimant received significant treatment in calendar year 2005, and she apparently worked a bit more regularly than the previous year. The

4

next documented treatment was on August 29, 2006, when she was hospitalized again at Summit Ridge, diagnosed with bipolar disorder, manic, with psychosis, as well as altered mental state. She was again found to be suffering auditory hallucinations and was described as delusional and paranoid. It was noted also that she had been non-compliant with medication and with follow-up. She improved with treatment and was allowed to go home in "fair" condition after some five days.

At the hearing, the claimant testified that the two above-noted periods of hospitalization had been her only ones but that there had been other times when she probably should have been hospitalized. She described having "multiple personalities" which contribute to her mood swings and to her inability to get along with other people. She also exhibited evidence of continued religious preoccupation, stating at one point that she is not receiving treatment and had declined to take her medications because "Jesus told her not to." Her fiancé described her as being "extremely paranoid," although she "at times can be happy." He said they have had several physical altercations but that he has "tried to stand by her."

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

## III.   Standard of Review

An individual is considered to be disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 42 U.S.C. §§ 423(d)(2) and (3).

The scope of judicial review of the Commissioner's decision is limited.  The court's function is to determine: (1) whether the record, as a whole, contains substantial evidence to support the findings and decision of the Commissioner; and (2) whether the Commissioner applied proper legal standards.  See Vaughn v. Heckler, 727 F.2d 1040, 1042 (11th Cir. 1984).  Substantial evidence is more than a scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  See Bloodsworth v. Heckler, 703

F.2d 1233, 1239 (11th Cir. 1983).

The claimant has the initial burden of establishing the existence of a "disability" by demonstrating that she is unable to perform her former type of work. If the claimant satisfies her burden of proving disability with respect to her former type of work, the burden shifts to the Commissioner to demonstrate that the claimant, given her age, education, work experience, and impairment, has the capacity to perform other types of jobs which exist in the national economy. See Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

Under the regulations as promulgated by the Commissioner, a five step sequential procedure must be followed when evaluating a disability claim. See 20 C.F.R. §§ 404.1520(a) and 416.920(a). In the sequential evaluation, the Commissioner must consider in order: (1) whether the claimant is gainfully employed, 20 C.F.R. §§ 404.1520(b) and 416.920(b); (2) whether the claimant has a severe impairment which significantly limits her ability to perform basic work-related functions, 20 C.F.R. §§ 404.1520(c) and 416.920(c); (3) whether the claimant's impairments meet the Listing of Impairments, 20 C.F.R. §§ 404.1520(d) and 416.920(d); (4) whether the claimant can perform her past relevant work, 20 C.F.R. §§ 404.1520(e) and 416.920(e); and (5) whether the claimant is disabled in light of age, education, and residual functional

capacity, 20 C.F.R. §§ 404.1520(f) and 416.920(f). If, at any step in the sequence, the claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. See 20 C.F.R. §§ 404.1520(a) and 416.920(a).

## IV.    Findings of the ALJ

The ALJ made the following findings of fact:

1.    The claimant meets the insured status requirements of the Social Security Act through at least the date of the ALJ's decision.

2.    The claimant has not engaged in substantial gainful activity since August 1, 2003, her alleged disability onset date (20 C.F.R. 404.1520(b), 404.1571, *et seq.*, 416.920(b) and 416.971, *et seq.*).

3.    The claimant has the following severe impairment: bipolar disorder, manic, with psychotic features (20 C.F.R. 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to simple, low-stress jobs that do not require a significant amount of public contact.

6.    The claimant is capable of performing her current job as an off-bearer and tender in a box company, which does not require the performance of work-related activities precluded by her residual functional capacity (20 C.F.R.

404.1565 and 416.965).

7.      Even if the claimant's current job does not qualify as past relevant work ("PRW"), she remains capable of performing a wide range of other jobs. Based on vocational expert ("VE") testimony, jobs exist in significant numbers that a person having her age, education, work background and residual functional capacity could perform, including such jobs as: laundry laborer (DOT #368.360-014) (1,700 such jobs in the region where the claimant resides, 79,000 nationally) and kitchen helper (DOT #318.687-010) (4,400 in region, 240,000 nationally).

8.      The claimant has not been under a disability, as defined in the Social Security Act, from August 2, 2003, through the date of the ALJ's decision (20 C.F.R. 404.1520(f) and 416.920(f)).

[R. at 11-15].

## V.      Discussion

        In the present case, the ALJ found at the first step of the sequential evaluation that Plaintiff Tanya Cook had not engaged in substantial gainful activity since the alleged onset of disability on August 1, 2003. At the second step, the ALJ determined that the claimant has bipolar disorder, manic, with psychotic features. [R. at 11-12]. Although this impairment was "severe" within the meaning of the Social Security Regulations, the ALJ found at the third step that it did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Id.]. The

ALJ found at the fourth step of the sequential evaluation that the claimant was able to perform her current job as an off-bearer and tender in a box company. [R. at 15]. Even if the claimant's current job does not qualify as past relevant work, the ALJ concluded that she is able to perform a wide range of other jobs which exist in significant numbers, such as laundry laborer and kitchen helper. [R. at 15]. Therefore, the claimant was not under a disability from August 1, 2003, the alleged onset date, through September 28, 2007, the date of the ALJ's decision. [Id.].

Plaintiff argues that the ALJ erred by failing to provide any reasons for rejecting the opinions of two State agency medical consultants. [Doc. 16 at 12-16]. Plaintiff also contends that the ALJ's decision to discredit the claimant's testimony was not supported by adequate reasons and was conclusory. [Id. at 16-20]. Plaintiff's final argument is that the Appeals Council erred when it did not remand this case back to the ALJ with instructions to develop the record regarding the claimant's recent work activity and recent medical treatment. [Id. at 20-24].

## A.    State Agency Consultants' Opinions

The ALJ found that the claimant has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to simple, low-stress jobs that do not require a

significant amount of public contact. [R. at 12]. Plaintiff's counsel argues that the ALJ's mental RFC assessment contradicts the opinion of Dr. Cal VanderPlate, a State agency psychologist, whose findings were affirmed by another State agency consultant, Dr. John Petzelt. [Doc. 16 at 12-16]. According to Plaintiff's counsel, the ALJ's decision to reject these opinions without providing any reasons for doing so constitutes a failure to comply with the relevant Social Security regulations and rulings. [Id.].

The Commissioner argues that the State agency consultants' records provide support for the ALJ's findings. [Doc. 17 at 4-11]. Dr. VanderPlate stated in the RFC assessment that the claimant: is capable of understanding and remembering detailed directions; can carry out at least semi-skilled tasks; is somewhat limited in the areas of pace and concentration; would be restricted dealing with others due to polysubstance abuse and possible bipolar symptoms; and is limited with regard to stress tolerance. [R. at 311]. Dr. VanderPlate also found that the claimant's difficulties, limitations, and problems were not substantial. [Id.].

While the Commissioner recognizes that Dr. VanderPlate indicated in section I of the MRFC form that Plaintiff was "moderately limited" in her ability to perform various mental activities, these statements were not part of the RFC assessment.

11

Instead, the section I comments are only a worksheet containing summary conclusions, as described in both the MRFC form and the Program Operations Manual System ("POMS") § DI 24510.060(B)(2).[1]  [Doc. 17 at 7-8; R. at 311-13].  As a result, the Commissioner contends that it would have been inappropriate and inconsistent with the POMS for the ALJ to use Dr. VanderPlate's conclusions in section I of the MRFC form as an assessment.  [Doc. 17 at 7-9].  The RFC assessment containing a detailed explanation of the claimant's degree of limitation is found in section III of the MRFC form, which is where Dr. VanderPlate recorded his assessment.  [Id.].  For these reasons, according to the Commissioner, the ALJ did not need to discuss Dr. VanderPlate's conclusions in section I of the MRFC form, and the ALJ's mental RFC finding and the hypothetical questions to the VE were consistent with (and, in fact, more restrictive) than Dr. VanderPlate's actual RFC assessment in section III.  [Doc. 17 at 9-11].  The court finds the Commissioner's arguments on this issue to be unpersuasive.

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments.  Along

_____

[1]"While the POMS does not have the force of law, it can be persuasive." Stroup v. Barnhart, 327 F.3d 1258, 1262 (11th Cir. 2003) (citations omitted).

AO 72A
(Rev.8/82)

with his age, education and work experience, the claimant's residual functional capacity is considered in determining whether the claimant can work." <u>Lewis v. Callahan,</u>125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. §§ 404.1545(a), 404.1520(f)). When assessing a claimant's RFC, the ALJ must consider and address the opinions of all "medical sources," which are defined as "acceptable medical sources, or other health care providers who are not acceptable medical sources." SSR 96-8p; 20 C.F.R. § 404.1502. Social Security regulations provide, "State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants. . . ." 20 C.F.R. § 404.1527(f); <u>see also</u> 65 Fed. Reg. 11,867-11,868 ("because State agency . . . psychological consultants are highly qualified . . . psychologists who are also experts in Social Security disability evaluation, administrative law judges will consider their findings with regard to the nature and severity of an individual's impairment as opinions of nonexamining physicians and psychologists"). Social Security Ruling 96-8p provides, "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."

13

In his RFC assessment, the ALJ found that the claimant has the capacity to perform simple, low-stress jobs that do not require a significant amount of public contact. [R. at 12-14]. However, as Plaintiff points out, "Dr. VanderPlate opined that Ms. Cook was far more limited than found by the ALJ." [Doc. 18 at 2]. Dr. VanderPlate opined in section III of the MRFC form, which is the RFC assessment, that the "claimant will be restricted dealing with others." [R. at 311]. In other words, while Dr. VanderPlate found that Plaintiff would be restricted in dealing with any other people, the ALJ found that Plaintiff was only limited in dealing with the public. If the ALJ had a question about what Dr. VanderPlate meant by "others," he could have turned to section I of the MRFC, where Dr. VanderPlate noted that Plaintiff was moderately limited in her ability to interact with not only the public but with supervisors and co-workers. [R. at 312]. This is consistent with Dr. VanderPlate's findings in the RFC assessment found in section III. [R. at 311].

Dr. VanderPlate also found in his RFC assessment that Plaintiff's "pace and concentration [are] somewhat limited." [R. at 311]. Although the ALJ wrote in his decision that the claimant has "moderate difficulty" in the areas of concentration, persistence, and pace, he did not include any such limitation in his RFC assessment. [R. at 12]. As noted *supra*, the ALJ simply found that Plaintiff could perform simple,

14

low-stress jobs that do not require a significant amount of public contact. [R. at 12-14]. The ALJ did not find that Plaintiff had any limitations in pace and concentration. [Id.].

The ALJ did not explain why he rejected Dr. VanderPlate's assessment that Plaintiff had limitations in her ability to relate to people other than the public and in her ability to maintain pace and concentration. [R. at 12-14]. Because the ALJ did not "explain why [Dr. VanderPlate's] opinion was not adopted," as required by SSR 96-8p, his RFC assessment did not comply with this ruling.

Not only did the ALJ fail to explain why he rejected the opinion of Dr. VanderPlate, the ALJ never even mentioned the opinion of Dr. VanderPlate or the concurring opinion of Dr. Petzelt. [R. at 9-15, 311, 327]. This also constituted a failure to comply with SSR 96-8p, which provides, "The RFC assessment must always consider and address medical source opinions." The Commissioner argues that "any oversight by the ALJ in not expressly discussing the evidence from Dr. VanderPlate was at most harmless, as a specific discussion of the evidence from Dr. VanderPlate would serve only to provide additional evidence to support the ALJ's findings." [Doc. 17 at 10]. This argument is not persuasive.

As noted *supra*, Dr. VanderPlate's findings of Plaintiff's limitations were

15

greater than those found by the ALJ, and therefore, they do not provide evidence to support the ALJ's findings. Moreover, the testimony of the VE establishes that the ALJ's decision not to credit or even discuss the findings of Dr. VanderPlate was significant to the outcome of this case and not harmless error as argued by the Commissioner. Dr. VanderPlate opined in his RFC assessment that the "claimant will be restricted dealing with others." [R. at 311]. At the administrative hearing before the ALJ, the VE was asked and testified to the following:

> Q.   With any of these jobs that you said [the claimant] potentially could do, wouldn't all of those require someone who can at least minimally get along with co-workers and a boss where they're not going to have psychotic episodes that –
>
> A.   Well, there's no job that would be completely people free, so in that sense, yeah, there would be some.

[R. at 484]. Given the VE's testimony that the ability to deal with others at some minimal level would be required for Plaintiff to work at any job, the ALJ's failure to discuss Dr. VanderPlate's opinion does not amount to mere harmless error.

In conclusion, the court finds that the ALJ failed to comply with 20 C.F.R. § 404.1527(f) and SSR 96-8p when he made his RFC assessment. The ALJ did not credit the findings of State agency psychologist Dr. VanderPlate, which were affirmed by State agency psychologist Dr. Petzelt, with regard to Plaintiff's ability to deal with

16

others and maintain pace and concentration. The ALJ offered no explanation for not crediting these findings. In fact, he did not even discuss the State agency psychologists' opinions at all. Accordingly, the court **ORDERS** that the ALJ's decision be **REVERSED** and that the case be **REMANDED** for further proceedings. The ALJ should discuss the opinions of Dr. VanderPlate and Dr. Petzelt, and if he again decides to discredit them, then he should offer specific and substantive reasons and address the issues discussed *supra*.

B. **ALJ's Credibility Determination and New Evidence Submitted to Appeals Council**

Plaintiff's counsel next argues that the ALJ did not offer sufficient reasons for discrediting the claimant's testimony and that the Appeals Council erred when it did not remand the case to the ALJ to consider new evidence. [Doc. 16 at 16-25]. Because the court has concluded that remand is warranted for the reasons discussed *supra*, an extensive discussion of these issues is not necessary. The court, nevertheless, will briefly address Plaintiff's arguments in order to provide the ALJ with further guidance upon remand.

Plaintiff Cook testified that she is unable to maintain relationships with others, including her family. [R. at 470-75]. She stated that the few friends she used to have

17

"don't even come around anymore." [R. at 475]. When asked if her problems affected her job, Plaintiff testified:

> I don't see me having a future on that job. I can't get along with anybody. I'm constantly into it with everybody. One day I go in with ["]how-you-doing,["] speaking to people; next day, I got attitudes, I think nobody like me, everybody got to be against me, and I feel like that's not what I really want, but that's just how it is. I have a hard time getting along with people.

[R. at 473]. Plaintiff then explained that she believes that one of the reasons she has difficulty dealing with others is "because of the different personalities" she has. [R. at 470, 473]. When asked about her different personalities, Plaintiff testified:

> There's T that sums up all three personalities because . . . their names begin with T. . . . [Y]ou've got Tenya. She's smart. She's educated, she's a good mother, good friend . . . outgoing personality, likes to be an achiever. Then you've got Tanya. She's mean, she's coldhearted, she's rude, she's violent, she's out of control, pushing everybody out of her life. . . . She's holding Tenya back for everything that she wants out of life. . . . Then you got Teeliri. She has a music career, she has a heart of soul, she wants to make it in music. Tenya and Teeliri wants to come together and boot Tanya out because she's got a lot of problems. . . . And I'm not able to have anything, or be successful or anything because of the middle person, which is Tanya. She gets real ugly, she gets real mean toward all her friends, her family, even her child. . . . [S]he don't want Tenya to have anything, she don't want Teeliri to make it and be successful. She's a problem. . . . I try to seek help. She tells me that I don't need it. And it's hard, because she's going to push everybody back that can help me or wanted to help me. I'm fighting a battle. I got to get rid of this middle person.

18

[R. at 471-72]. If Plaintiff's testimony were credited, then a finding of disability would be warranted. The VE confirmed at the administrative hearing that in order to hold any job, a person must be able to get along with others to at least a minimal degree and not have psychotic episodes. [R. at 484].

When a claimant seeks to establish disability through subjective testimony of pain or other subjective symptoms, a three-part "pain standard" established by the Eleventh Circuit applies. Holt v. Sullivan, 921 F.2d 1221, 1223 (11ᵗʰ Cir. 1991). "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." Id. If the ALJ decides to discredit a claimant's testimony, he must give explicit and adequate reasons for doing so. Id.; Hale v. Bowen, 831 F.2d 1007, 1011 (11ᵗʰ Cir. 1987).

The ALJ found that Plaintiff's testimony was not credible. Specifically, the ALJ wrote:

> [T]he undersigned finds that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. In this regard, I note the claimant's candor in acknowledging

19

that she was not, at the time of the hearing, receiving treatment or taking her medication. However, to the extent that she may have alleged inability to work in a simple, low-stress job that did not involve significant contact with the public, her testimony was not credible.

[R. at 14]. Plaintiff's counsel argues, and the court agrees, that the ALJ's credibility finding is insufficient. The only specific reason offered by the ALJ in support of his decision to discredit Plaintiff's testimony was that at the time of the hearing, she was not receiving treatment or taking medication. [Id.]. When asked at the hearing why she was not seeing a doctor, Plaintiff testified: "I need to. When I try to seek help, I guess it's Tanya that's trying to hold Tenya back." [R. at 478]. Plaintiff stated, "I tried to set up some appointments for myself after getting out [of] the hospital, and I didn't make that appointment. I tried to set up some for myself. For whatever reason, Tanya didn't want me to go because she don't want me to seek help for the problems that I'm having." [R. at 479]. Plaintiff also testified that when she was in the hospital, she refused to take medication "because it's some things that happened in my room, and Jesus told me to decline the medication." [Id.].

In light of Plaintiff's testimony regarding her reasons for not obtaining treatment or taking medication, the court finds that substantial evidence does not support the ALJ's decision to discredit Plaintiff's subjective allegations based on a lack of

treatment. There is evidence in the record that Plaintiff Cook's insight into her condition is not good. [R. at 443]. And as Plaintiff's counsel notes, the court in Burroughs v. Massanari, 156 F. Supp. 2d 1350, 1362 (N.D. Ga. 2001), addressed a case involving similar facts and held, "[T]he fact that plaintiff does not perceive herself as depressed and has not obtained treatment from a mental health specialist is not surprising or indicative of an absence of significant illness in light of [the medical source's] finding that plaintiff has poor insight into her mental condition." Given the evidence that Plaintiff's mental illness could be a contributing factor regarding the reasons she did not seek medical treatment or take medication, the court finds that the ALJ's decision to discredit the claimant's testimony solely on a lack of treatment is not supported by substantial evidence.

The Commissioner offers a number of other reasons why it was proper for the ALJ not to credit Plaintiff's testimony. [Doc. 17 at 11-20]. The deficiency in the Commissioner's argument is that the court must evaluate the ALJ's decision based on the reasoning provided by the ALJ in his written decision. As the Eleventh Circuit wrote in Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984), "We decline . . . to affirm simply because some rationale might have supported the ALJ's conclusion. Such an approach would not advance the ends of reasoned decision making." While

AO 72A
(Rev.8/82)

the Commissioner has presented some evidence which may support the ALJ's credibility determination, there is no indication that the ALJ actually based his determination on this evidence. As noted *supra*, the only evidence cited by the ALJ in support of his decision to discredit Plaintiff's testimony was the fact that she was not receiving treatment or taking medication at the time of the hearing. Upon remand, if the ALJ again refuses to credit Plaintiff's testimony, he should "articulate explicit and adequate reasons" for doing so. Hale, 831 F.2d at 1011.

Plaintiff's counsel next argues the Appeals Council erred when it did not remand the case to the ALJ to consider new evidence. After the ALJ issued his decision finding that Plaintiff was not disabled, she stated in her request for review to the Appeals Council that she was "let go" from her job and that she had been seeking medical treatment. [R. at 5]. Plaintiff's counsel argues that this evidence is significant because the ALJ, in support of his decision, cited the fact that Plaintiff was working and not seeking treatment at the time of the administrative hearing. [R. at 11, 14, 15]. Plaintiff argues that the new evidence presented to the Appeals Council should be evaluated under sentence four, and not sentence six, of 42 U.S.C. § 405(g), and that the court should review the new evidence to determine whether substantial evidence supports the ALJ's decision. In support thereof, Plaintiff cites Ingram v. Comm'r of

Social Security, 496 F.3d 1253, 1262 (11th Cir. 2007), which held, "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous."

The deficiency in Plaintiff's argument is that the claimant did not properly present new evidence to the Appeals Council. Plaintiff's allegation made to the Appeals Council included no details about her alleged termination, what type of treatment she had been receiving, or what particular medical source she had been seeing. Moreover, it was not accompanied by any documentation. [R. at 5]. Plaintiff's "new evidence" consists only of a single allegation that she made in her request for review, wherein she wrote, "[N]ot long after the hearing I was let go–now I've been seeking treatment." [R. at 5]. Plaintiff presented no documentation and has yet to present any documentation, supporting her allegation. As noted by the Commissioner, the Supreme Court in Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5, 96 L. Ed. 2d 119 (1987), wrote, "It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." Given the bare allegation made by Plaintiff, the court concludes that she presented no new evidence to the Appeals Council. And as the court in Ingram held, "When no new evidence is presented to the Appeals Council and

23

it denies review, then the administrative law judge's decision is necessarily reviewed as the final decision of the Commissioner."

Because Plaintiff did not properly present new evidence to the Appeals Council, it is not part of the administrative record. Any evidence submitted to this court can only provide the basis for a sentence six remand, not a sentence four remand. To obtain a remand based on new evidence pursuant to sentence six of 42 U.S.C. § 405(g), Plaintiff must establish: (1) that the new evidence is non-cumulative; (2) that it is material, with a reasonable possibility of changing the administrative result; and (3) that good cause exists for Plaintiff's failure to submit the evidence at the administrative level. See Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986). The court finds that Plaintiff is unable to establish any of these elements for the simple reason that the claimant still has not properly presented "new evidence" to this court. The only "evidence" that Plaintiff cites to is the allegation made to the Appeals Council in her request for review. As the Commissioner notes, "Plaintiff has not submitted any evidence to the Court indicating that she received treatment following her hearing on September 10, 2007." [Doc. 17 at 21 n.6].

The court finds that, contrary to Plaintiff's argument, the Appeals Council did not err by refusing to remand the case back to the ALJ. Plaintiff's brief and

24

unsupported allegation did not constitute "new evidence" which formed the basis of either a sentence four or a sentence six remand. Nevertheless, because remand is warranted for other reasons, the ALJ should consider any evidence that Plaintiff provides regarding her alleged termination from employment and any medical treatment she has received since the last hearing.

## VI.    Conclusion

For the foregoing reasons and cited authority, the court finds that the decision of the ALJ was not supported by substantial evidence and was not the result of an application of proper legal standards. It is, therefore, **ORDERED** that the Commissioner's decision be **REVERSED** and that this action be **REMANDED** for further proceedings in accordance with the above discussion. See Melkonyan v. Sullivan, 501 U.S. 89, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991).

In the event that benefits are awarded on remand, Plaintiff's attorney may file a motion for approval of attorney's fees under 42 U.S.C. §§ 406(b) and 1383(d)(2) no later than thirty days after the date of the Social Security letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past-due benefit calculation stating the amount withheld for attorney's fees. Defendant's response, if any, shall be filed

25

no later than thirty days after Plaintiff's attorney serves the motion on Defendant.

Plaintiff shall file any reply within ten days of service of Defendant's response.

      **SO ORDERED**, this 6th day of February, 2009.


JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)